## EPSTEIN v. BUCKEYE COTTON OIL COMPANY.

### Opinion delivered January 20, 1913.

1.  CONTRACT—BREACH—DEFENSE.—B. Co. advanced money to E. to purchase cotton seed for it, and E., failing to purchase the same, B. Co. brought suit to recover the money advanced. E. answered, setting out that B. Co. had entered into an illegal combination with others, and that he could not perform the contract. *Held:* B. Co. was entitled to the return of the unused money, which had been given to E. for a specific purpose, and that it was no defense to the action that B. Co. was in an illegal combination to control prices of cotton seed. (Page 246.)

2.  COUNTER CLAIM AND SET-OFF—DEFENSE.—In an action by B. Co. against E. for recovery of money advanced E. for a specific purpose, an allegation by E. that he had suffered damages because B. Co. had entered into an illegal combination to control price of cotton seed, is no ground for a counter claim or set-off by E. against B. Co. for the reason that the claim was not one arising out of the contract or transaction set forth in the complaint, and was not a cause of action arising upon contract. Kirby's Digest, § § 6099, 6101. (Page 247.)

3.    APPEAL AND ERROR—ERRONEOUS INSTRUCTIONS—HARMLESS ERROR.—
   When instructions are given over the objections of defendant, and
   it is manifest that the jury did not follow them as indicated by
   the verdict, even though the instructions are erroneous, no preju-
   dice resulted to the defendant, and the giving of such instructions
   is no ground for reversal.   (Page 247.)

Appeal from Chicot Circuit Court; *H. W. Wells,*
Judge; affirmed.

*Baldy Vinson,* for appellant; *June P. Wooten* and
*W. G. Streett,* of counsel.

The court erred in striking from the answer and
cross complaint the allegation that plaintiff, after con-
tract with defendant, became a member of a pool to con-
trol prices of cotton seed in Arkansas, etc.

The rule is conceded that a collateral contract is not
affected by an illegal combination in restraint of trade
of one of the parties in violation of either the common-
law, the Sherman anti-trust law or the State statute of
January 23, 1905.   184 U. S. 540; 91 Ark. 180.   This is
not such a collateral contract as is contemplated when
announcing the rule followed in the foregoing cases, be-
cause in this case the appellee, without disclosing its ille-
gal combination, contracted with appellant to put him,
without his knowledge, into such illegal combination as
its agent to further purpose.   212 U. S. 227; 174 U.
S. 639.

*B. F. Merritt* and *J. W. & J. W. House, Jr.,* for ap-
pellee.

The court properly struck out the allegations as to
appellee being a member of a combination, etc.

(a)   The judgment in the case of the *State of Ark-
ansas* v. *The Buckeye Cotton Oil Company* shows on its
face that it was not a confession of guilt.

(b)   The contract was certainly collateral to any
pool or combination which may have been entered into.
184 U. S. 540, 545; 91 Ark. 180, 190, 191, 192.

(c)   A claim for damages for entering into a com-
bination based upon statute is not a proper subject of
a set-off or counterclaim in a suit by a member of the

pool to recover money advanced. 184 U. S. 540, 551; Kirby's, § 6099; 105 Fed. 731; 27 Ark. 489; 83 Ark. 283; 84 Ark. 218; 86 Ark. 166; 15 Q. B. D. 476; 152 Fed. 869; 100 S. W. (Ark.), 410; 71 Ark. 323; 74 Ark. 589; 83 Ark. 483; 90 Ark. 537.

McCULLOCH, C. J. Appellee instituted this action in the circuit court of Chicot County against appellant to recover the sum of $1,538.23, alleged to be due for money advanced from time to time to be used by the latter in purchase of cotton seed. It is alleged that during the seasons of 1910-11 and 1911-12 there were written contracts between the parties whereby appellant agreed to purchase seed on commission for appellee, and that the money sued for was furnished from time to time to be used in purchasing the seed. It is alleged in the complaint and set forth in the itemized account exhibited with the same that at the close of the season of 1910-11 appellant owed appellee a balance in the sum of $219.90, and that amounts of money advanced under the contract of 1911-12 swelled the account of the amount sued for.

Appellant in his answer denied the correctness of the account, and alleged that appellee was indebted to him for a larger sum than set forth in the complaint for seed purchased and delivered to appellee. The sum of $555.20 is set forth as a counterclaim in excess of the amount claimed by appellee. The answer also sets forth the following, which the court, on motion of appellee, over appellant's objection, struck out:

"And that after entering on his duties, the plaintiff and the Arkansas Cotton Oil Company, and others in and about Little Rock, did enter and become a member of a pool with said Arkansas Cotton Oil Company, and others about the city of Little Rock, whereby a trust, combination, confederation and understanding was reached between said parties to control the price of cotton seed in the State of Arkansas, and that thereupon plaintiff limited defendant to such price, so far below the price paid by outside mills, out of the State, that he could not perform such contract, which combination, pool, trust, confederation and agreement was not known to him at

the time of entering into contract on the 21st day of August, 1911; that there is now pending in the Crawford (Arkansas) Circuit Court a suit styled The State of Arkansas on relation of Hal Norwood, Attorney General, and J. D. Arbuckle, as prosecuting attorney, against plaintiff and the Arkansas Cotton Oil Company et al., to cancel the charter of plaintiff and for the penalty prescribed by act of January 23, 1905, for such illegal combination, and that during the pendency of said suit plaintiff is without authority to sue in the courts of this State, and until it clears itself of such charge. That the defendant would reasonably have made on his contract with plaintiff, had it not entered into such unlawful combination, during the season of 1911-1912, the sum of five thousand dollars, and that by reason of such unlawful combination on the part of plaintiff, defendant has been damaged in the sum of five thousand dollars, for which he prays judgment, costs and other relief in the premises.''

The case went to the jury upon conflicting testimony as to the issues presented, namely, the correctness of appellee's account and of appellant's counterclaim; and the jury returned a verdict in favor of appellee for the sum of $1,000.

The first thing urged by appellant as ground for reversal is the ruling of the court in striking out part of his answer.

It is insisted that the part of the answer stricken out set forth a violation of the statutes of this State and of the United States, and presented a good defense to the action. Counsel rely upon the decision of the Supreme Court of the United States in *Continental Wall Paper Co.* v. *Voight*, 212 U. S. 227. That case was a suit to recover on an account for wall paper sold and delivered, it being shown, by way of defense, that the plaintiff and other manufacturers, had entered into an illegal combination in restraint of trade, that the defendant had made himself a party to the scheme by entering into an obligation to abide by the terms of the illegal contract, and that the contract of sale was not collateral but an

essential part of the illegal combination. The court, in its opinion, after pointing out that "the account in suit was made up, as to prices and terms of sale, not upon the basis of an independent, collateral contract for goods sold and delivered, but with direct reference to, in conformity with and for the object of enforcing the agreements that constituted * * * the illegal combination," said:

"The Continental Wall Paper Company seeks, in legal effect, the aid of the court to enforce a contract for the sale and purchase of goods which, it is admitted by the demurrer was in fact and was intended by the parties to be based upon agreements that were and are essential parts of an illegal scheme. * * * It is admitted by the demurrer to that defense that the account sued on has been made up in execution of the agreements that constituted or out of which came the illegal combination formed for the purpose and with effect of both restraining and monopolizing trade and commerce among the several States."

It would seem from this that the decision of the court was based upon two points, namely, that the defendant, who was the purchaser of the goods, in his contract of sale became a party to the illegal contract; and that said contract of sale was not collateral but was a part of the illegal transaction. The court distinguished the facts of that case from the case of *Connelly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, where the court said:

"Assuming, as defendants contend, that the alleged combination was illegal if tested by the principles of the common law, still it would not follow that they could have, at common law, refused to pay for pipe bought by them under special contracts with the plaintiff. The illegality of such combination did not prevent the plaintiff corporation from selling pipe that it obtained from its constituent companies, or either of them. It could pass a title by a sale to any one desiring to buy, and the buyer could not justify a refusal to pay for what he bought and received by proving that the seller had previously, in the prosecution of its business, entered into

an illegal combination with others in reference, generally, to the sale of Akron pipe.''

In the case of *Midland Valley Rd. Co.* v. *Hoffman· Coal Co.*, 91 Ark. 180, we held (quoting from the syllabus) that ''a railroad company, when sued for breach of its common-law or contractual duty to furnish cars for shipment of coal, may not·defend upon the ground that plaintiff is a member of a pool or trust to regulate and control the price of coal.'' The ground of the decision was, that the contract or transaction between the shipper and the railroad company with reference to the furnishing of cars was collateral and for that reason was not affected by the alleged illegality of the combination entered into between the plaintiff and other coal companies to control the price of coal.

In the present case we deem it unnecessary to enter into a discussion of the question, whether the contract between appellant and appellee for the purchase of seed should be treated as part of the alleged illegal combination or whether it was collateral, for, in either view of the case, this is not a suit upon the contract and appellee does not invoke its enforcement. Even if the contract be treated as entirely void, appellee is entitled to recover the money advanced to buy the seed with. It would be different, of course, if appellee was suing to enforce the contract or to recover damages for its breach. Then the question would arise whether the contract was valid, and if found to contravene any statute of this State or of the United States, no recovery could be had upon it. But as before stated, this is merely a suit to recover money which appellee had advanced to appellant to be used for the purchase of seed and which was not so used. The money was the property of appellee and continued to be until used for the prescribed purposes; and when appellant failed or refused to use it for those purposes there was an implied obligation to return it. It is not important to inquire whether, strictly speaking, the contract created the relation of principal and agent between the parties, for, in any event, appellee was entitled to recover the money which had been advanced for certain purposes

only and was not used pursuant to the terms of the contract. *Nelson* v. *Hirschberg,* 70 Ark. 39.

Some of the funds, it is contended, were advanced to appellant to use in constructing or repairing a gin in aid of his business of purchasing seed. If that be true it did not lessen his obligation to return the money so used where he failed to carry out the contract.

Our conclusion is, that the court did not err in striking out the part of the answer hereinbefore set forth, as it presented no defense to this action. Nor did it show grounds for a counterclaim against appellee. The damages set forth in the counterclaim are alleged to have been caused, not by any breach of the contract between these parties, but on account of the alleged illegal combination between appellee and other concerns engaged in the same business. There is, in fact, no breach of the contract on appellee's part alleged. The allegations merely are that there was an alleged combination whereby the price of seed was decreased to the extent that appellant could not realize the profit he would otherwise have made under the contract. Appellee had the right under the contract with appellant to limit the price to be paid for seed, and both parties reserved the right to rescind the contract at any time on ten days' notice. Damages alleged to have arisen on account of said alleged combination could not be made the subject-matter either of a set-off or counterclaim against the demand of appellee for the reason that the same was not one "arising out of the contract or transaction set forth in the complaint," and was not "a cause of action arising upon contract or ascertainable by the decision of a court." Kirby's Digest, § § 6099, 6101.

It is contended that the court erred in giving certain instructions with reference to the effect of an alleged settlement or adjustment between the parties as to the account of business of the season of 1910-11; but as it is manifest that the jury did not follow those instructions, this being demonstrated by the fact that they did not find in appellee's favor for the full amount claimed in those settlements, it is unnecessary to determine whether

the instructions were accurate. As no prejudice resulted from the instructions, the ruling of the court in giving them, even if erroneous, does not constitute ground for reversal.

We find no prejudicial error in the record, and the judgment is therefore affirmed.